The next matter, No. 25-1162, Selacare Technologies, Inc. v. Circle Internet Financials, LLC. At this time, would Counsel for the Appellant please come to the podium and introduce himself on the record to begin? Good morning, Your Honor. Charlie Gerstein for the Plaintiff's Selacare Technologies. I'd like to reserve three minutes for rebuttal, if I can, Your Honor. Yes, three minutes. Thank you very much. I appreciate it. Much about this case is factually complicated, but because this case is an appeal from the grant of a motion to dismiss, the issues can be quite simplified by focusing on the pleading standard. As a matter of well-pleaded fact, Defendant Circle Internet Financial issues U.S. dollar coins and promises to back each coin with a dollar. And as a matter of well-pleaded fact, Appellant Selacare Technologies completely destroyed a million of them. Similarly, as a matter of well-pleaded fact, U.S. dollar coins function as securities certificates because they trade on securities exchanges, they're concededly divisible, and they meet the other requirements for security under Delaware law. For these reasons, the District Court erred by concluding that Selacare Technologies had to meet the requirements of the securities itself in order to state a claim for replacement of a lost securities certificate. Counsel, the – I mean, the District Court looked at the documents that – which he, I think, treated as a contractual document that governed the relationship between the parties here and concluded that the document made very clear that your client assumed the risk of a loss that would be occasioned by the very conduct that took place here, the improper entry of a code that led to the misdirection of the asset. What's wrong with that analysis? Why doesn't that – the clarity of that document seem to justify the District Court's decision here? I think there's two reasons that that is error, Your Honor. The first is that the terms speak to a loss of coins, not a loss of dollars. And there's a clear distinction in the terms between them. In some places, the terms say, if you violate these terms, we may deny your right to redeem U.S. dollar coins for dollars. In other places, it says you are responsible for circumstances in which you send coins to the wrong party or a loss of coins or misdirection of coins. But we're not talking about coins here. We're talking about dollars. The facts are well pleaded that the coins have been destroyed. Circle is keeping the dollars, and that is fundamentally the problem. The second is that they cite no authority for the proposition that the UCC permits you to impose such a term on a security certificate. Indeed, imagine American Express traveler's checks, I think, are the closest example. If American Express had written on the back, no matter what happens, if you lose this piece of paper, we won't redeem it, we have no authority for the proposition that that would override Article 8, Section 405, which requires issuers to reissue lost security certificates. So even if it were correct that the terms, in fact, governed the circumstances Circle describes them, I don't think that would override Delaware law, and they cite no authority to that point. So speaking of Delaware law, as you know, they tend to apply to written documents, documents in writing. I know you have an argument that this is kind of the same thing, but it seems like that's a pretty tall hurdle that you've got to get over. So what do you say? I think two things. First is that we... And why wouldn't it be up to the Delaware legislature to make any changes if the law hasn't kept up with practice? I think the text of the law is clear that a security certificate does not need to be a writing. The word writing applies to other circumstances, and imagine a circumstance, for example, in which an issuer of security certificates uses pieces of metal, like actual coins, or rubber. I don't think there's any reason to believe it has to be paper. And indeed, every document in this case, every certification, could be printed out. In the complaint, and that's at, I believe, page three of the appendix, we explain that some blockchains indeed do exist on paper. There's nothing unique about blockchains that it must always be digital. And so I think, given the clear distinction here, there's at least a factual question whether these documents are possessible, indeed, as they're described in Circles terms, whether they certify a financial obligation, and whether they are documents. And we allege quite clearly in the complaint that they are. And so I don't think it's a matter of Delaware law. Why is that a factual question? It's a factual question whether those things are true of U.S. dollar coins. I think the question whether those things, if true, constitute a security certificate is a legal question. But the law doesn't. Two things are true of the law on that point. First, as the New York Court of Appeals said in Highland Capital Management, Article 8 is meant to be flexible. It is meant to apply to securities arrangements as they may develop in the future. Is there any authority of a case where a security certificate was found to be something other than paper? So there's one Delaware superior court that said, well, it's possible they don't need to be paper that I think also involves circle. I'm aware of that. But beyond that, has any court ever held that? No, Your Honor. But, of course, no court has held the opposite either. Right. So I don't know. Can you explain? Your brief makes a quick allusion to Article 12, which are these controllable electronic records. Can you distinguish for me what is the relationship of you're saying crypto is a security, or this kind of crypto at least is a security, and then there's this other category of thing called a controllable electronic record? What is the difference, or how do they relate? So they're overlapping categories. A controllable electronic record is simply an electronic record that can be possessed, that can be controlled. And if traded on a securities account under Article 8, it becomes a, quote, financial asset under the definitions of the UCC. And if it otherwise meets the requirements of a security, then it is a security. So controllable electronic record is a category of record, not a category of financial instrument, or at least not necessarily. And so, for example, if a company wanted to issue shares of its ordinary common stock as crypto tokens, and indeed some companies are doing this, those would be controllable electronic records, because they're electronic records that can be controlled, and they would evidence the ownership of what's unquestionably a security. And this case is just like that. Imagine if a, I'm not sure if the court is familiar with this, but a Vanguard money market fund, for example, where what you are legally buying is a one share that they commit to redeem for a dollar, and that's governed by the securities regime under federal law, which we do not allege to be the case of Circle, but it is under Article 8. If those were represented by crypto tokens, we think everything about this case would be the same. And, you know, that's not a far-fetched hypothetical that is happening in the market. Counsel, also important to the district court was this Mint account issue, which your client had never established with the defendant. The district court took the view that that limited your ability to make the demand that you were making here. What's wrong with that view of the case? I think the district court confused conditions for exercising the rights of the security with conditions for getting a new security certificate. Those two things simply cannot be the same legal requirement, because then Article 8, Section 405 would never apply to any bearer instrument ever, and that can't be right. By definition, a bearer instrument, in order to exercise the instrument, you have to possess it, and in order to be under Article 8, Section 405, you by definition cannot possess it, and yet you are still entitled to a new certificate. So the error there is we don't allege that Selicare, at the time of the loss, was entitled to go to CERCLE and say, give me the money right now. It would have to register for a Mint account. We understand that there are some circumstances under which CERCLE could deny the right to register for a Mint account. We don't need to prove that. What we need to prove is simply that they had the certificate and that they lost it. If later Selicare goes to CERCLE and says, excuse me. So you have to prove obligation, and I guess maybe this is what this gets to. It's not an obligation. As your position, it's not an obligation to Selicare. It's an obligation sort of in a more general sense that when they issue a coin, they are taking on an obligation to redeem it to people that have Mint accounts, and what makes it useful to anyone is that fact, because as it gets traded around the world, if it's not redeemable, why would you want it? You only want it. And so is that right? Is that like when you think of the obligation, they don't really have an obligation to you based on some contract, but they have an obligation to anyone with a Mint account. That's correct, Your Honor, and they have an obligation to issue Mint accounts except in the circumstances that their terms allow them discretion not to. My understanding is that they read their terms to say, we never have to pay anyone ever. We can deny a Mint account whenever we want. We can suspend a Mint account whenever we want, and if we don't want to pay, we don't ever have to pay, and that their only obligation is simply to, quote, back, close quote, each cone with a dollar. Even if that's true, that's still a financial obligation. It just doesn't make any economic sense. Who would ever want to buy the Mirrors? Just so from my understanding, for you an essential point is that you were not asking for dollars. You simply wanted the reissuance of a document, a certificate, that would allow you or somebody who might hold that document to then make that demand for the dollars. I guess from your point of view, that's the critical difference. I think that's exactly right, Your Honor. As to count two of our complaints, as to count three, it was a claim for damages in the alternative, but as to count two, that's exactly right. We're seeking only the reissuance. The mere fact that they could if they want, and again, this is contested, but that they could deny Selecare the right to redeem those coins in the future, that's up to them. So in your reply brief, you said, well, if we had sent it to a known wallet, we wouldn't be able to recover. And I guess I'm trying to step back from what we've been talking about, the specifics of Article 8 and this provision, but I'm more worried or I'm worried a little bit about sort of like how crypto works. So there's a mistake, and you're saying that it all comes down to whether you sent it to a known wallet or an unknown wallet, and if it went to an unknown wallet, which there's no evidence there's a private key for, that triggers your obligation. But if we messed up and instead we typed in an 8, we typed in a small B instead of a capital B, and it went to one where there is a private key, we're out of luck. That seems at least conceptually to make a lot hinge on nothing. And so just let me finish the question, and I'll give you a little time to answer it. And we're talking about sort of a currency substitute. Your company could have used the traditional banking system with all the protections that applies. You could have done a wire. You could have done it that way. But you chose to use crypto, which has advantages, and then it has disadvantages, and now we're like on this very narrow sort of the way the mistake happened lets you win, and what are the implications for that for how this emerging, I'll call it technology, works? So I think the first thing to understand is as a matter of well pleaded fact, an error doesn't, it's impossible that that sends it to a known wallet address. The wallet addresses are not sequential. They're randomly generated, and the odds of randomly selecting one that has an owner are zero. It's the odds of picking one grain of sand off a billion beaches. It's out of the question. So as a matter of well pleaded fact, and we will have to prove this below, this kind of error destroys the coin. The circumstance I was talking about, if we sent it to a known party, is something like in a circumstance where someone's been defrauded. This is not the remedy for an ownership dispute, but I think just as a practical matter, crypto, in fact, is easier to administer this obligation than prior technologies would have been. So when American Express issued traveler's checks, which were governed by this rule, let's say, although they may be governed by checks. Let's just assume they're governed under Article 8 for this purpose. If someone says, I lost one, and reports it to the issuer, they cancel that one, and then they have to worry about the fact that they may have given it to someone else. They bought a car with it. They rented a hotel room with it. Whatever. That person will later come back with the original and say, pay me. That's the purpose of the bond requirement. Here, that's impossible. We have an expert who will testify, and I'm confident we can prove below, that could not have happened here. And similarly, they can put notice to the world that says, and we tried to do this by sending a message, but they could interplead. They could file an in rem action. They could do anything they want to say. Notice to the world, do you own these coins? Do you have the private key to this wallet address? Come forward and we'll pay you. That's not going to happen because the coins have been destroyed. So the emerging technology actually functions very well for this exact purpose. And just very briefly on my client's decision to use crypto, the UCC doesn't import a comparative fault regime. This is surely a decision he regrets. It's not in the record what the transaction was actually about. We believe he was the victim of fraud. Okay. Thank you, Counsel. Thank you. Thank you, Counsel. At this time, would Counsel for the appellee please introduce himself on the record to begin? Thank you, Your Honor. Stephen Johnson on behalf of CERB. Counsel, before you have a chance to catch your breath, let me just pose a question to you if I could. Happy to, Your Honor. Putting aside some of the technicalities here, your position is really a very unattractive one in this sense. They made a mistake. They're asking to be, in a sense, relieved from that mistake. They'd like to have a document which would allow them at some future point to ask that they get, I guess, the dollars. Why should your client be permitted to take advantage of this mistake when all that's being asked is that they be restored to the position that they were already in? There's no loss in that for you. If anything, there's only a windfall from a simple human error. Why should you be permitted to take advantage of that foreseeable human error when it doesn't seem to cost you anything to simply respond to their demand? That's why I say, at least on its face, it's a rather unattractive position to be taking. Well, thank you, Your Honor. I think I probably disagree with about five or six of the premises of that question. Well, I'd think you would. And, of course, the idea that Circle is made a million dollars better off is just not supported by reality. Circle retains an obligation to keep reserves for this money. It has not been frozen, and it is in the exact same position it was before, except that this money is now in a different digital wallet. But think about the attractiveness of what they're saying. So, Selicare, if they had simply followed the explicit instructions of Coinbase, run a $1 test transaction, make sure it gets where you want it to go, cut and paste the same digital address in, and send the other $999,000, there would be no need for us to be here this morning. But having failed to exercise due care, it's their own admitted negligence, they're asking you to make Circle the unpaid insurer. But they're not asking you for a million dollars. They're just asking for you to give them that whatever, the hash values for the coins. But the premise of that, Your Honor, is that there could never be any liability to us, and that money, it remains in circulation. The USDC remains in circulation. So there's what he says is a question of fact, and why isn't it? He says the odds of that belonging to someone are as much as all the atoms in the universe. And if that's true, that means one thing. And if it's not true, it means something else. But that seems to be a fact. Well, there are six different independent legal hurdles under the UCC that they can't satisfy. Okay, well, let's start with that one. That one's lost. Okay. So you agree that that's a factual dispute? Sure. So they allege in paragraph 41 of their complaint that the USDC here exists at a known location. That's not lost. That's not destroyed. Indeed, they tried to get it back. You don't get something back that you know where it is. It may be inaccessible, but that's a different thing than being lost or destroyed within the meaning of the statute. And if you and I have a $100 bet on the Patriots game, and I lose, and I've got $100 in cash, and you say, put it in my P.O. box at the post office, and I go to the post office, and I put the $100 in the wrong thing, and it's locked to me. And the post office says, well, I'm sorry, we don't give out the identity of the post office boxes. That is not lost or destroyed. We know exactly where it is. It is inaccessible to me. And that's their argument. But even more fundamentally, this is not a security, let alone a certificated security. And I'd like to talk about that because I think, Judge Aframe, your question about the obligation really goes to the heart of that issue. So if you look at the statute here, if you look at Section 102A.15, and remember, this is in the title. Section 101 of Article 8 of the UCC starts with the phrase, this title is about, quote, investment securities. USDC is not an investment. It's a stable coin. It's a digital currency. So it's not an investment. But then look at Section 102A.15. This is written in the mid-1960s to address paper stocks and bonds, and it draws a distinction between two things. An obligation of an issuer, that's bonds, or maybe preferred stock that has an obligation to pay a dividend. That's the obligation of the issuer that this is talking about, in contrast to a share, participation, or other interest in an issuer, or in property, or an enterprising issue. That's a classic equity interest. That's a stock. They agree this is not an investment. They don't argue to the contrary. I think their position is that this certificate, it would be a security certificate because it is dealt in or traded on a securities exchange. Isn't that? Those are three independent requirements, Your Honor. So first of all, it has to be a security. And their concession that it's not investment, I'm saying you need to read 102A.15 in light of 101, where the authors of the Delaware Uniform Commercial Code, who could change this law if they wanted to, they say this is about investment securities. So the concession that it's not an investment actually creates a problem. Okay, so that's point one. Point two, I understand that. Let's move to the – And so the obligation. Let's try to take these one at a time. So obligation. As you said, Your Honor, your question alluded to this. They're relying on some sort of obligation in general, whereas this is talking about an obligation of an issuer to – But you are the issuer. Circle is the issuer, right? Circle is the issuer, but it would be like a bond. Let me make sure I understand. You've issued coins. You're the issuer. We issued coin. And what makes those coins have value is the idea that if a person eventually comes to you to get United States currency for them, that can be done. Without that, they are not worth anything, are they? What gives the coin value is the fact that pursuant to money transmitter laws and various other public laws as well as their own contractual commitments, we keep reserves. So people know this is safe. It's a stable security. It's going to be redeemed for a dollar under the conditions where it can lawfully be redeemed. And so that is an obligation you have made that makes this work. And that obligation is not put in the complaint, and it wasn't argued below. It's forfeited. But even if you take it, the statute – Put the money aside. That's the one you say is not in the complaint, that you have to put aside a dollar for getting coins.  Right. But just the fact – I mean, you do do that. The fact that there's an obligation that you have undertaken. If you have a mint account and you come forward with coin, we will give you dollars. You do agree to do that, yes? To the owner. And that's my question. There's two pieces of it. The way that you come to the obligation is you're adding, in my mind, obligation to the person who bought it originally, as opposed to you creating an obligation that gives the thing value. I'm saying read the statute in context. It's talking about an obligation of the issuer to the person who owns the bond or owns the stock. They're saying unmoor it from the bond and the stock, and it can be a different type of obligation. I'm saying that's not legally valid. You have to read this in light of its context. In the terms, it's about investments. And in addition, there's no case law supporting their position. And there are scores, hundreds, thousands of cases nationwide involving these provisions of the UCC that talk about stocks and bonds. That's what it was written for in the mid-1960s. So it's not a security. But even if they somehow cleared that hurdle, it wouldn't be a certificated security. There is no authority for the idea that this can be some sort of electronic part of a computer. All of the authority, the official commentary on the UCC, says this is talking about a paper certificate. Indeed, the statute was amended in 1978 to distinguish between uncertificated and certificated securities. And it underscored the fact that this is paper. Now they say, oh, but the statutes talk about electronic records. Precisely. They don't do it here. Other provisions talk about this. And you can read something into the fact that they haven't amended this provision about certificates to say any file on a computer will do. That is rewriting the statute. And I would urge you to be cautious about writing the statute into a field that was not intended to govern, which is a very important part of our commercial ecosystem. Counsel, what does it mean when you say that your client will have to retain on the books a reserve of a million dollars in real currency, if you will, to back up the possibility that the appellant could ask for actual dollars? Is that a regulatory requirement of some kind? So CERCLE is subject to both public law and private law obligations. I think this is footnote nine of our brief talks about money transmitter laws. And they require companies like CERCLE to keep reserves equal to the amount of the USDC. So there's that. Of course, there's other statutes like the Bank Secrecy Act Congress just passed, the Genius Act, which doesn't take effect for another 18 months. It wouldn't grant relief in these circumstances, but there's a lot going on in this space. It's an infinitesimal probability that there will ever be a demand for dollars. You still have to keep on the books. Basically, you have to tie up this money in reserve in the event that almost impossible event would occur. It's speculation that this account is not associated with a person. It's speculated that they wouldn't come forward. Now, in fact, the assets haven't been freezed. They haven't been what's called block listed. But even if they were, CERCLE would maintain the reserves. It's only when they're completely taken out of circulation. There is no risk. In theory, everybody could come forward in one day and ask for all the money that CERCLE has. That won't happen, but that theoretically could happen. This million dollars of fiat currency, no one will ever come for. So you get to have it and invest it and earn whatever you earn on it. And so you know, even though it's in the reserve, that no one's coming for that. That's some benefit to you. Actually, Your Honor, I think it's speculation whether no one is coming for it. They talk about how the private keys are so infinitesimally small that somebody could ever figure out the private key. That's a different question from whether somebody could ever show up and say, actually, that was sent to my account. And I want to point out something here. You know, they're trying to make this sound, the word they use in their brief is trivially easy to just, oh, just reissue. You know, that, you have to look at this in context. Now, we accept for purposes of 12b-6 that this was an accident. But to say that it would be trivially easy for CERCLE to deal with this problem, which happens with some frequency, is ridiculous. So they say, just to make sure I understand, they say you can block this wallet from ever transacting, thereby sort of killing the coin that's in that wallet. And therefore, you know to a very high degree of certainty that there will never be a transaction because you have blacklisted the wallet that has the coin. So they say we could access deny it. And they say that would take it out of circulation. That's not true. They don't cite their complaint on that. They don't cite anything on the record on that. And indeed. Isn't that an inference from the idea of this whole thing? Like it's an infinitesimal probability that anyone has access to it. And you have denied access to the account. So therefore, it's not really in circulation. Well, CERCLE's terms provide that it will only, you know, take things out of circulation when they're validly redeemed. So that's what we base that on. But I would add that, you know, CERCLE to accommodate this in sort of a global way, it would have to be very methodical. And it would have to have a whole investigation system to say, okay, was this an accident? Or was it a case of buyer's remorse where somebody intended to do the transaction and then decided later, maybe not. Or it could be fraud. You know, in any of those cases, CERCLE's still on the hook to hold the reserves, right? So it's not made any better off by holding those reserves. Their unjust enrichment theory isn't even validly before the court. They didn't plead it. There's a contract here six ways to Sunday. They lose on unjust enrichment. I don't know about the pleading, but the contract part. So there is a contract that describes various. Well, they allege in their complaint that CERCLE's terms are the governing contract. And we're accepting that for purposes of this dispute today. And they'll say, you know, the risk is on you if that's your argument, right? Well, they expressly assumed it in numerous ways. And, of course, Coinbase's, you know, this was not on our platform, but Coinbase's terms say the very same thing. Be very, very, very, very careful. And if you want to think about it in terms of ease of dealing with this, it would be extremely easy for them to get it right by exercising due care. And they, in fact, assumed that risk contractually and expressly. But for CERCLE to develop a whole system of determining which cases are accident, which ones are bias remorse, which ones are fraud would make the cost of using this currency much higher. And that would be true of every player in this space. As a matter of interest, there's been recent federal legislation dealing with cryptocurrency. Does it, if you know, does it in any way address the kind of issues that we're talking about here today? So it takes the Genius Act you're referring to.  I don't know all of the details, excuse me, of it. But it wouldn't provide for liability in these circumstances. There's a rulemaking going on now that will obviously fill in some of the gaps. But what I think is important about this, and Judge Howard's question spoke to this as well, this is an area where you might well balance the interests differently. And that should be left to the legislative process. It doesn't make sense for the judiciary to take a law written in the 1960s to do with paper stocks and bonds and say we're going to twist the statute into a pretzel and, you know, jump over these six hurdles to apply it to something that's not even an investment vehicle. It's a currency. Of the six, which do you think is your strongest point? Well, I think most fundamentally, Your Honor, it's not a security. But it's very easy to say it's not certificated because there's no paper associated with it and there's no authority for the idea that it could just be a computer phone. The security part is putting it, I understand the investment point, but the obligation point is you have no obligation to them. Correct. It has to be to the owner. And, of course, they not only don't possess it, but they haven't satisfied the contractual requirements that the district court talked about in its opinions. Thank you, counsel. We urge the court to affirm. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself back on the record? He has a three-minute rebuttal. Charlie Gersine for Salicare. So a lot of what my friend on the other side was saying are things that he can say to the jury. This is going to be hard for us. This is going to be a problem for us. Maybe you didn't really destroy it. Maybe secretly there was someone on the other side. We are going to have to prove that that was not the case. So I don't think that's relevant to the court right now. I think the relevance to the court right now is this point that somehow it's not an obligation to the owner of the security. And I don't think that's right. The terms speak of obligations both to users type A and users type B. And when they speak of those obligations, they say that Circle will be relieved of those, quote, obligations. It is in the record, obligations, in their terms of service. They will be relieved of those obligations if the holders violate the terms of service by, for example, conducting illegal transactions. There's no evidence of that. They have no support for the proposition that you must comply with the terms of the security in order to state a claim under 845. And that's simply not right. So at the end of the day, what we have here is a company that has issued billions and billions of dollars of tradable tokens in exchange for real dollars and says we never have to pay them to anyone. That is fundamentally what the argument is supposed to be. I thought I heard your opponent just say, because it's undisputed that you no longer are the owner of this asset, they don't have an obligation to you. They may have an obligation to this unknown party, but for purposes of disposing of this lawsuit, they don't have an obligation to you, and that's what matters. Isn't that what they're saying? That might be what they're saying, but that can't be right. I'm not sure, honestly, that that's what they're saying, but it cannot be right because by definition, when you lose a security certificate, you lose evidence of the financial obligation. And in a certificate in bearer form, that is the obligation. Those two things merge together under the UCC, the evidence of the obligation, the obligation. If you lose the certificate, by definition, the issuer will not have an obligation to you, but they do have an obligation to reissue the certificate, and then you can do with it what you want. That is the UCC regime. It does not allow parties like Circle to exempt themselves from it by simply saying, well, if you look at our terms very closely, we never have to pay anyone. Incidentally, my friend on the other side did say, quote, it's going to be redeemed for a dollar, close quote. So I'm not exactly sure if the position is we never have to pay or we'll pay sometimes or we'll pay some people. So before you run out of time, on this certificate question, let's just take that one. And I asked you, well, is there any law about whether they need to be written or not? And you said there really isn't any. I mean, should we be thinking about sending this to the Delaware Supreme Court who could tell us whether? I mean, that seems to be a fundamental way to resolve the case, but I actually have no idea whether it's true or not, whether it needs to be written, whether it needs to be in paper. You know, like there are a lot of questions here that are definitions in the UCC that have no other, you know, a certificate is a certificate. Well, that's not helpful. An obligation is an obligation. So are we really the best people to be deciding this? Should I? Yeah, you can answer that. Thank you, Your Honor. I think certifying this case to the Delaware Supreme Court to the extent that the court is unsure whether the word writing needs to apply to certificate, we agree is a good idea. I think it is clear that nothing in the UCC prevents that conclusion. Nothing in the UCC says it has to be on paper, although those requirements are applied to other instruments in the UCC, including, for example, in Article III. It is clear that a crypto token can be a, quote, record, close quote, and it's clear, at least as a matter of ordinary language usage, that certificate can be record. But to the extent there's ambiguity in that definition, I agree that the Delaware Supreme Court would be the best tribunal to resolve it and would urge the court to certify, or at the very least to permit us to remand on a, excuse me, to permit us to amend on remand so that we can clarify exactly the other common law claims. Thank you, Counsel. Thank you. Thank you, Counsel. That concludes argument in this case. Dan.